UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-60976-RNS

| | |
|---|---|
| U.S. STRUCTURAL PLYWOOD INTEGRITY COALITION, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FORESTWOOD INDUSTRIES, INC., and ASSOCIATION FOR LABORATORY ACCREDITATION INC. | ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**(EXPEDITED HEARING REQUESTED)**

Plaintiffs hereby move the Court, pursuant to Federal Rule of Civil Procedure 65(a), for a preliminary injunction requiring defendant American Association for Laboratory Accreditation, Inc. ("A2LA") to revoke its accreditations of defendant Forestwood Industries, Inc. ("Forestwood") as a PS 1 product certification body and as a PS 1 inspection body and requiring defendant Forestwood Industries, Inc. to immediately revoke the PS 1 certifications of the 17 or more Brazilian plywood mills currently licensed by this defendant. Plaintiffs further move the Court to preliminarily enjoin Forestwood from issuing any new PS 1 certifications to Brazilian plywood mills pending the trial on the merits.

In support of this motion, plaintiffs rely on the record herein, the record contained at *U.S. Structural Plywood Integrity Coalition v. PFS Corporation, et. al.*, Case No. 0:19-cv-62225-RKA, ECF Nos. 170, 349, 358-370, the declarations of Juan Medellin, Gray Skipper, Tyler Freres, Ronald Anthony, Dr. Todd Shupe, and Christopher Griffith filed herewith and the following legal memorandum.

**LEGAL MEMORANDUM**

I.      **INTRODUCTION AND FACTUAL BACKGROUND.**

Over the course of 33 months of litigation in a related case, *U.S. Structural Plywood Integrity Coalition v. PFS Corporation, et. al.*, Case No. 0:l9-cv-62225-RKA, (hereafter "Structural Plywood I"), the publicly available evidence demonstrating that the two U.S. companies that were then certifying over 30 Brazilian plywood mills to stamp their plywood as meeting the PS 1 structural product standard were in fact operating a completely dysfunctional product certification, inspection and testing system grew into a veritable mountain. In the face of this evidentiary mountain, defendant Timber Products Inspection, Inc. ("TPI") saw the handwriting on the wall early and agreed to terminate its PS 1 certification program in Brazil and to revoke the PS 1 certificates of over 20 Brazilian plywood mills effective August 31, 2021. Seven months later, this Court issued a 77-page Opinion and Order on March 30, 2021, rejecting every one of the more than one dozen summary judgment arguments advanced by the remaining defendant, PFS Corporation ("PFS-TECO"). At that point, with PFS-TECO facing certain defeat in a June 2022 trial, the former TPI-certified mills and many of the then 12 Brazilian licensees of PFS-TECO raced to stand up a substitute combination of PS 1 certification, inspection and testing agencies to keep open their access to the lucrative market for structural plywood in the United States.

As the factual record assembled by plaintiffs clearly demonstrates, the current combination of Forestwood, A2LA and an affiliated Brazilian laboratory is a sham, an absolute house of cards. Forestwood, which sometime after March 29, 2022, purportedly certified over 100 different plywood panel products as meeting the PS 1 structural standard required by the building codes in all 50 states is clearly unqualified to have done so. But to a Brazilian plywood industry that operates as a collusive and corrupt cartel, it is all about the grade stamp, the ticket to maintaining Brazil's position as the largest foreign producer of PS 1 plywood sold in the U.S.– accounting for 11% of the market – and the millions of dollars in profits flowing to the more than 30 Brazilian plywood mills in the states of Parana and Santa Catarina in southern Brazil. The Brazilian plywood industry and its complicit U.S. importers and distributors' total disregard for whether the Forestwood stamp accurately represents the stamped plywood's structural performance is revealed by the following email issued by one of the U.S. importers of Brazilian plywood:

> I've talked to several guys in the south FL market what they thought about the injunction. They all think it's b.s.----they tell me the Brazilian mills already have a new rating agency, F.I.I. [Forestwood], that is going to re-stamp existing panels and stamp future production.

Medellin Decl. ¶7.

The above email was issued just eight days following this Court's sweeping permanent injunction requiring the revocation of all PS 1 certificates and grade stamps issued by PFS-TECO, permanently barring PFS-TECO from issuing those grade stamps in the future in Brazil and establishing a strict standard regarding the scope and adequacy of the certification, inspection and testing system that must be in place before the injunction would be lifted and PFS-TECO allowed to re-license Brazilian mills to produce PS 1 plywood. That standard, which put the world on notice of the legal requirements for the comprehensive quality assurance program that underlies the PS 1 product standard, is found in the third ordering paragraph of the Permanent Injunction & Entry of Stipulated Final Judgment set out in full below:

> **IT IS FURTHER ORDERED AND ADJUDGED** that PFS TECO shall not move to lift this permanent injunction until such time as PFS TECO has performed adequate testing of the tree species to be utilized in the region of Brazil for the manufacture of PS 1 structural plywood, has identified those grades of veneer by species and panel layout formulation that will meet the PS 1 requirements and has put in place the necessary laboratory, inspection and testing regimes to make certain that any plywood mills licensed by PFS TECO to produce PS 1 plywood have demonstrated the capability to consistently manufacture structural plywood that complies with the PS 1 standard. In addition, to support a motion to lift this Order, PFS TECO must demonstrate that it has in place a comprehensive system of plywood certification, inspection and testing practices that will provide substantial ongoing assurance that all of its PS 1 plywood licensees are continuing to consistently comply with the PS 1 standard or are terminated for noncompliance.

A copy of the permanent injunction entered on May 24, 2022 is attached as Exhibit A.

The comprehensive system of product certification, inspection and testing required by the 61-page PS 1 standard, which is captured in the above quote from the permanent injunction, bears no resemblance to what defendants have done to date in Brazil for one simple reason: Forestwood and its affiliated Brazilian testing laboratory do not have the capability of performing the required qualification testing that must precede the issuance of a PS 1 certificate and a PS 1 grade-stamping license for any PS 1 plywood panel product. Rather than perform the required time-consuming

3

battery of mechanical tests, Forestwood and the Brazilian plywood industry developed a fraudulent work-around: secure accreditations for Forestwood as a PS 1 certification and inspection body and then simply rely on the qualification testing performed by TPI and PFS-TECO from years ago. This gambit has been pursued despite the damning fact that, in Structural Plywood I, 100% of the PS 1 certificates issued to over 30 Brazilian mills were revoked, with TPI's revocations effective August 31, 2021 pursuant to a settlement and PFS-TECO's effective May 31, 2022 pursuant to a permanent injunction.

The proof that Forestwood is unqualified to be accredited as a PS 1 certification body is demonstrated by the plain and unequivocal language in the three accreditations that A2LA has issued, two to Forestwood and one to the affiliated Brazilian laboratory sharing part of its name, Forestwood Plywood Analysis Laboratory LTDA ("FPAL"). These certificates, each of which consists of a certificate page with A2LA's corporate seal and a second page detailing the scope of the accreditation, are Exhibits B, C and D to the Complaint. These certificates tell the following story:

- Forestwood was first accredited as a PS 1 product certification body on July 28, 2021 with respect to PS 1-09, an out-of-date PS 1 standard that was replaced in 2019 by PS 1-19.[1]

- Forestwood was first accredited as a PS 1 inspection body on July 28, 2021 with respect to the then applicable PS 1-19 standard.

- Forestwood's affiliated Brazilian testing laboratory was first accredited to perform three PS 1 mechanical tests, less than half of those required to qualify PS 1 panel products, just two and one-half months ago on March 29, 2022.

Armed with the certificates summarized above, the combination of Forestwood and its affiliated Brazilian laboratory simply cannot perform product qualification testing that meets the requirements of the PS 1 standard. Moreover, even if that capability had existed as of March 29, 2022, it would have been impossible to perform the extensive testing required on over 100 plywood panel products in the space of less than two months, which is the length of time between the limited testing accreditation received by the Brazilian laboratory on March 29, 2022 and plaintiffs' discovery of Forestwood's certification of 17 Brazilian mills to produce over 100 PS 1 plywood

---

[1] Forestwood's accreditation to the now obsolete PS 1-09 standard rather than the currently in force PS 1-19 standard is, standing alone, sufficient reason to revoke the PS 1-19 certificates issued to the Brazilian plywood mills, for which Forestwood lacks any accreditation whatsoever.

products on the company's website in mid-May. As stated in the declarations of wood scientist Ronald Anthony and southern yellow pine expert and wood scientist Dr. Todd Shupe, it would have taken many months for a laboratory qualified to ISO 17025 to perform the required PS 1 qualification testing on that many products.

Plaintiffs' motion for preliminary injunctive relief must be considered against the backdrop of the extensive record developed in Structural Plywood 1, which generated absolutely damning evidence of the blatant failures of TPI and PFS-TECO to comply with the requirements of PS 1 in the certification, inspection and testing program that each agency was administering in southern Brazil. In addition to the unquestionably corrupt practices summarized in the Anthony and Shupe declarations, four sets of testing of Brazilian plywood panels stamped as meeting the PS 1 standard showed massive levels of failure. These included testing by the American Plywood Association in mid-2018, TPI in the fall of 2018, Clemson University in the late summer of 2019 and Blackwater Testing in the spring of 2021. The failure rates on these tests were, in chronological order, 100%, 100%, 75% and 50%, respectively.

The bottom line is clear: two non-native southern yellow pine species (loblolly and slash pine) are so fast-growing in southern Brazil that veneer produced from those species cannot be utilized by Brazilian plywood producers to consistently manufacture on-grade PS 1 plywood. As Mr. Anthony states in his declaration, there is a life and safety risk to American citizens if plywood panels with inadequate bending stiffness are installed on a house or commercial structure because off-grade PS 1 plywood "puts the public at risk of injury due to failure of the plywood panel." This is a matter of real urgency. American consumers must be protected from the blatantly fraudulent effort of the Brazilian plywood industry, in league with and facilitated by the improper accreditations and certifications of defendants, to continue exporting plywood panels falsely advertised as PS 1 compliant into the United States. The sections below demonstrate that plaintiffs have more than met the requirements for the issuance of a preliminary injunction. And, especially in light of ongoing actions of defendants and the Brazilian plywood industry to evade the effects of this Court's permanent injunction issued on May 24, 2022, the briefing schedule and hearing on this motion should be expedited to the maximum extent possible.

## II.    LEGAL STANDARD.

Federal Rule of Civil Procedure 65(a) empowers the Court to enter a preliminary injunction. Preliminary injunctive relief is appropriate where the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest. *Chanel, Inc. v. 5creplicachanel.com*, No. 19-62333-CIV, 2019 WL 7371816, at *2 (S.D. Fla. Oct. 7, 2019) (Altman, J.) (quotation omitted).

## III.    ARGUMENT.

### A.    Plaintiffs are Highly Likely to Succeed on the Merits.

#### 1.    Plaintiffs' Lanham Act claims against Forestwood are likely to succeed.

Plaintiffs' complaint alleges claims against Forestwood under the Lanham Act for direct and contributory false advertising. To prevail on their direct false advertising claim, plaintiffs must prove five elements:

> (1) [Forestwood's] statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [plaintiffs have] been, or likely will be, injured as a result of the false or misleading statement.

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248 (11th Cir. 2015) (quoting *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012)).

To prevail on their contributory false advertising claim, plaintiffs must prove that Forestwood's Brazilian client mills engaged in direct false advertising and that Forestwood "contributed to [the Brazilian mills'] conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Id.* at 1277. The hallmarks of "material participation" include "whether the false advertising is serious and widespread, making it more likely that the defendant kn[ew] about and condone[d] the acts; and whether the defendant engaged in bad faith refusal to

6

exercise a clear contractual power to halt the false advertising." *Id.* at 1278 (quotation omitted; alteration in original). Contributory liability also attaches where, as in this case, a third party provides "a necessary product or service, without which the false advertising would not be possible." *Id.* at 1277.

The new evidence filed in support of this motion and the additional evidence incorporated herein from the record developed in Structural Plywood I clearly demonstrates that plaintiffs are likely to prevail on their direct and contributory false advertising claims. As to direct false advertising, the PS 1 certificates and grade stamps that Forestwood authorizes its Brazilian client mills to affix to every panel of PS 1 plywood that they produce for import and sale into the U.S. are a direct representation to U.S. consumers that the stamped plywood consistently meets the strict structural requirements of the PS 1 standard. The evidence to support each element establishing that these statements constitute direct false advertising in violation of the Lanham Act is briefly summarized below:

1. **False or Misleading Statements.** Forestwood's statements that its Brazilian client mills' plywood consistently meets PS 1-19 are literally false. The evidence in support of this point developed during Structural Plywood I is overwhelming and includes the results of testing performed by no less than three independent laboratories (APA, Clemson University and Blackwater). As wood scientist Dr. Todd Shupe – the most published expert on the effects of silvicultural practices on the growth and wood properties of southern yellow pine – explains in his declaration, these failing test results are predictable based on the low density of the non-native, plantation grown pine species that the Brazilian mills rely on as their primary raw material source:

> [T]he influence of silvicultural treatments such as fertilization, stand density and pruning have significant effects on the chemical and mechanical properties of loblolly pine stands. A substantial volume of academic literature documents the fact that growth of southern yellow pine species in the states of Parana and Santa Catarina in southern Brazil is rapid due to a combination of advanced genetics, high rainfall, good soils and a substantially expanded growing season compared to that of the southern United States. For trees intended to be peeled into veneer for manufacture into plywood, site conditions and silvicultural practices can significantly affect veneer density and plywood strength and stiffness properties. The academic literature shows a dramatic difference between the percentage of juvenile wood in loblolly pine grown in southern Brazil compared to the U.S. South as documented in two research papers cited in paragraph 8 of my expert witness disclosure [in Structural Plywood I]. Juvenile wood, which is sometimes

> referred to as corewood, is significantly less dense and has lower strength and stiffness mechanical properties than mature wood, which is sometimes referred to as outerwood. The literature documents the impact of accelerated growth in Brazilian loblolly pine plantations, which results in both decreased wood density and stiffness compared to loblolly pine grown in its natural range in the southern United States.

Shupe Decl. ¶15. Accordingly, Dr. Shupe goes on to conclude that:

> [T]he root cause of the significant failure rates in the testing of Brazilian plywood was the lack of wood density and thus lower strength and stiffness levels of the veneer used in the manufacture of Brazilian plywood. This problem is predominantly a function of incorporating too many veneers with high levels of juvenile wood into finished plywood panels.

*Id.* at ¶6.

Expert wood scientist Ronald Anthony corroborates Dr. Shupe's conclusions and confirms that rather than take the necessary steps to mitigate the problems created by the substandard southern Brazilian fiber supply, Forestwood has simply continued the fraudulent certification of this off-grade plywood where its predecessors PFS-TECO and TPI left off:

> First, the Brazilian laboratory [FPAL] is accredited to perform less than half of the qualification tests required by the PS 1 standard, which necessarily means that the combination of Forestwood as certification and inspection body and the Brazilian laboratory as testing laboratory is incapable of meeting the PS 1 requirements. . . . Second, because the PS 1 certificates for all of PFS-TECO and TPI's former licensees were revoked as a result of either a settlement or court order, there would be no basis for Forestwood to certify those Brazilian plywood mills without first performing all of the required qualification testing by product under the PS 1 standard. In light of the fact that Forestwood's affiliated laboratory in Brazil did not receive its accreditation to perform less than half of the qualification tests under PS 1 until March 29, 2022, it would be infeasible to complete the extensive testing of 40 to 80 panels per product required to qualify a product under the PS 1 standard for the more than 100 PS 1 products listed by Forestwood on its website.

Anthony Decl. ¶5.

In sum, there is overwhelming evidence that the plywood produced by Forestwood's Brazilian client mills does not (and cannot) consistently meet the PS 1 standard and that, therefore, Forestwood's contrary certifications are literally false.

    **2.**    <u>**Consumer Deception.**</u> Where, as here, the statements at issue are literally false, the second element of consumer deception is presumed. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, at n. 11 (11th Cir. 2008). Consumer deception is also evident

8

from the ongoing purchasing and incorporation of off-grade Brazilian plywood in structural applications for which building codes require plywood to meet PS 1.

3. **Materiality.** Because U.S. building codes universally require PS 1 compliant plywood in structural applications, consumers do not purchase plywood for structural use unless it bears a PS 1 grade stamp. As coalition member Southern Veneer Plywood Sales Manager Juan Medellin explains:

> The PS 1 grade stamp is critical to the sale of our structural plywood. . . . I believe that this stamp is the single most important advertisement that our company utilizes and it is placed on every single PS 1 panel that we produce. Based on my experience, the market for structural plywood in the U.S. is well aware that the PS 1 grade stamp is required for all plywood used in structural applications in U.S. homes or commercial buildings. I know from firsthand experience that this stamp is what a building inspector is looking for during an inspection of a framed, sided and roofed structure to verify compliance with building codes throughout the U.S. and including Florida.

Medellin Decl. ¶3.

4. **Effect on Interstate Commerce.** The effect on interstate commerce of the massive influx of off-grade PS 1 plywood being imported from southern Brazil is difficult to overstate. Brazilian PS 1 plywood imports account for approximately 11% of the total U.S. market, and fluctuations in the level of imports has a direct effect on plywood prices throughout the country. In particular, the entry of Forestwood as a new certifier in the wake of TPI and PFS-TECO's departure from Brazil coincides with a spike in import volume that is plainly attributable to Forestwood's fraudulent reissuance of PS 1 grade stamps to off-grade Brazilian mills whose certifications were revoked by their former certifiers. As coalition member Freres Lumber Co.'s Vice President Tyler Freres explains in his declaration:

> [T]he downward trend of Brazilian plywood imports following TPI's exit reversed and imports have risen quickly in 2022. The year-to-date data from March of 2022 shows that plywood imports were 16% higher than they had been year-to-date in March of 2021, even after the major drop in imports late last year following TPI's revocation of its PS 1 certificates. The new certifications of the former TPI-certified plywood mills by Forestwood Industries, Inc. is undoubtedly a primary driver of that growth. Based on all available evidence, Forestwood is relying on the discredited test qualification data from PFS-TECO and TPI to certify those mills.

Freres Decl. ¶8.

5. **Injury.** Plaintiffs compete directly with Forestwood's Brazilian client mills in a market that the latter are flooding with off-grade product. This has devalued the price of structural plywood resulting in a substantial loss of revenue to plaintiffs. Freres Decl. ¶ 6. Even more significant, Forestwood's wanton abuse of the PS 1 grading system undermines consumer confidence in plywood, which will cause incalculable (and irreparable) damage to the going forward viability of plaintiffs' businesses as U.S. structural plywood producers. As coalition member Scotch Plywood's Vice President Gray Skipper explains in his declaration:

> The reputation of PS 1 structural plywood as a superior building product in residential and commercial construction is critically important to the long-term future of family-owned plywood companies like the nine members of the Plaintiff Coalition which operate 11 plywood plants in the U.S. South and Pacific Northwest and employ over 4,500 workers in family-wage jobs. Off-grade Brazilian plywood masquerading as meeting the PS 1 standard consistently fails the bending stiffness requirements of the PS 1 product standard and threatens to substantially harm the reputation of structural plywood in the United States and to cause consumers to shift to other products.

Skipper Decl. ¶11. In short, the evidence leaves no question that Forestwood, like PFS-TECO and TPI before it, is violating the Lanham Act by falsely certifying plywood to the PS 1 standard that it knows is not consistently on grade.

As to plaintiffs' contributory false advertising claim, the same evidence that demonstrates Forestwood is engaged in direct false advertising applies with equal force to its Brazilian client mills, which apply Forestowood's fraudulently issued grade stamp to each panel that they sell into the U.S. market for structural use. Like PFS-TECO and TPI in Structural Plywood I, Forestwood has the "clear contractual power" to halt these mills' false advertising by revoking the PS 1 grade stamps that bear its name. In other words, without Forestwood's authorization, the Brazilian mills' false advertising "would not be possible." *Estee Lauder,* 797 F.3d at 1277-78. Under *Estee Lauder*, therefore, Forestwood is every bit as culpable as its Brazilian clients for the import and sale of off-grade plywood that is falsely stamped (*i.e.*, advertised) as meeting PS 1 under a contributory false advertising theory. Forestwood's conduct is especially egregious because it has willfully propped up the Brazilian mills' scheme that would otherwise have terminated with the departure of PFS-TECO and TPI by reissuing PS 1 certificates without performing qualification testing and despite actual knowledge that every one of its client mills had these same certificates revoked as a direct result of their clear inability to consistently produce on-grade plywood.

In sum, Forestwood has blatantly violated and continues to blatantly violate the Lanham Act's prohibition against false advertising by licensing PS 1 grade stamps to mills that it knows do not consistently meet that standard's requirements. Under the legal standards articulated by the Eleventh Circuit in *Estee Lauder* – and particularly when viewed within the context of the proceedings and outcome of Structural Plywood I – plaintiffs' evidence clearly supports a finding that their Lanham Act claims against Forestwood for direct and contributory false advertising are likely to succeed on the merits.

### 2. **Plaintiffs' Lanham Act claim against A2LA is likely to succeed**.

Plaintiffs' Lanham Act claim against A2LA – to which the familiar elements of direct false advertising stated by the Eleventh Circuit in *Estee Lauder* apply – is also likely to succeed on the merits. First, A2LA's accreditation of Forestwood pursuant to ISO/IEC 17065 as a PS 1 certification body is a literally false statement regarding Forestwood's competence to properly perform those services. A2LA issued this accreditation despite actual knowledge that Forestwood was not qualified to reliably certify plywood to the PS 1 standard, including because it lacked (and still lacks) the required accreditations to perform the full battery of PS 1 qualification testing. As Mr. Anthony explains in his declaration:

> [T]he Brazilian laboratory [FPAL] is accredited to perform less than half of the qualification tests required by the PS 1 standard, which necessarily means that the combination of Forestwood as certification and inspection body and the Brazilian laboratory as testing laboratory is incapable of meeting the PS 1 requirements. No accreditation of Forestwood by American Association for Laboratory Accreditation, Inc. ("A2LA") should ever have occurred.

Anthony Decl. ¶5. Thus, Mr. Anthony concludes that "no reasonably well-informed and competent accreditation body should conclude that Forestwood is qualified for accreditation as a certification body under the PS 1 standard." *Id.* at ¶6.

Indeed, A2LA knows (or at an absolute minimum, should know) that Forestwood is willfully abusing its accreditation by issuing fraudulent PS 1 certificates to Brazilian mills that it knows do not consistently produce plywood is on grade. Under these facts, ISO/IEC 17011, which governs A2LA's conduct as an accreditor, explicitly requires it to revoke Forestwood's ISO/IEC 17065 accreditation as a PS 1 certifier:

> **7.11.2** Where there is evidence of fraudulent behavior, or the conformity assessment body intentionally provides false information or conceals information, the accreditation body shall initiate its process for withdrawal of accreditation.

11

Remarkably, despite this clear mandate, A2LA has to date failed to revoke Forestwood's accreditation. An injunction is therefore necessary to stop the ongoing fraud facilitated by A2LA.

The remaining elements of plaintiffs' Lanham Act claim against A2LA are satisfied for largely the same reasons as their claim against Forestwood. Specifically, consumer deception is presumed because A2LA's accreditation of Forestwood as a PS 1 certification body is a literally false statement that Forestwood is qualified to perform that function when in fact it objectively is not. The statement is material and affects interstate commerce because, without A2LA's accreditation, Forestwood could not issue the PS 1 certifications and grade stamps that facilitate the massive flow of off-grade plywood from southern Brazil into the U.S. Lastly, as explained in the Freres, Medellin, and Skipper declarations, and further supported in the extensive record developed in Structural Plywood I, plaintiffs are badly injured by the market corruption that A2LA's false accreditation of Forestwood facilitates.

### 3. Plaintiffs' negligence claims are likely to succeed.

To prevail on their negligence claims against Forestwood and A2LA, plaintiffs must prove the familiar elements of duty, breach, causation, and injury. *Randall v. Target Corp.*, No. 13-61196-CIV, 2014 WL 222340, at *5-6 (S.D. Fla. Jan. 21, 2014). The duty element is a question of law decided by the Court. *Dorsey v. Reider*, 139 So.3d 860, 863-64 (Fla. 2014). The remaining elements are questions of fact. *Limones v. Sch. Dist. of Lee Cnty.*, 161 So.3d 384, 389 (2015).

As to the first element, under Florida law, a duty of care arises from "the general facts of the case." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, at n. 2 (Fla. 1992) (citing Restatement (Second) of Torts § 285 (1965)). When a person's conduct creates a "'foreseeable zone of risk' posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure the conduct is carried out reasonably." *Dorsey*, 139 So.3d at 863 (quoting *McCain*, at 503). In this case, both defendants owed a duty of care. As to Forestwood, its inspection and certification of its Brazilian client mills to PS 1 created a foreseeable zone of risk that includes market corruption and unfair competition if not done properly. As to A2LA, its accreditation of Forestwood as a PS 1 certification and inspection body is the direct predicate that enables Forestwood to engage in the risk-creating conduct that is at issue. There is no question that Forestwood and A2LA each owed a duty to perform their respective roles as trusted inspection certification and accreditation bodies in a reasonable manner.

Both defendants blatantly breached their duty by failing to rigorously perform their respective oversight and quality assurance functions. In that regard, Forestwood certified no less than 17 Brazilian mills to the PS 1 standard despite the recent revocation of these same mills' PS 1 certificates by their former certifiers PFS-TECO and TPI based on overwhelming evidence that the mills do not consistently produce on-grade plywood. Incredibly, Forestwood issued these fraudulent certifications without performing qualification testing and in apparent reliance on the thoroughly debunked (and since revoked) qualification tests done by PFS-TECO and TPI. A2LA, for its part, accredited Forestwood to issue PS 1 certifications to the mills without performing any serious oversight and despite actual knowledge that Forestwood lacks the ability and accreditation to perform the necessary qualification testing.

Lastly, plaintiffs have suffered (and continue to suffer) severe harm as a direct and foreseeable result of defendants' negligence. The regression analysis prepared by expert witness Roy Anderson and Thomas Montzka during Structural Plywood I isolated the effect of off-grade Brazilian PS 1 plywood imports on U.S. prices and found that the import of off-grade Brazilian plywood caused a significant reduction in plywood prices in the Pacific Northwest and U.S. South. As Mr. Freres states in his declaration filed in support of this motion, the adverse effect on plywood prices caused by high volumes of off-grade Brazilian plywood imports continues today. This is the direct result of a significant segment of plywood importers and wholesale distributors ignoring the import of this Court's permanent injunction, while Forestwood and A2LA green-light the unabated dumping of counterfeit Brazilian plywood into the U.S. market through their sham accreditation and certification operations.

### B.     A Preliminary Injunction is Necessary to Prevent Irreparable Harm.

There is no question that plaintiffs face severe irreparable harm if a preliminary injunction does not promptly issue. Through nearly three years of litigation in Structural Plywood I, plaintiffs assembled a comprehensive and unimpeachable body of evidence demonstrating that the Brazilian plywood mills formerly certified by TPI and PFS-TECO do not and cannot consistently produce on-grade plywood. That evidence led directly to TPI's 2021 termination of its Brazilian plywood program and, ultimately, a powerful permanent injunction entered by this Court in May 2022 terminating PFS-TECO's Brazilian plywood program. The publicly available, damning evidence assembled in Structural Plywood I and this Court's injunction that ended that case should have put

the entire U.S. plywood industry on notice that PS 1 plywood manufactured in the southern Brazilian states of Parana and Santa Catarina should be considered presumptively off-grade until such time as: (1) adequate testing of the tree species used to manufacture plywood in southern Brazil is performed to determine which grades of veneer and panel layout formations will meet PS 1's requirements; and (2) an oversight body with authority similar to that exercised by the American Lumber Standard Committee in connection with lumber is established with respect to structural plywood.

Instead, fueled by irresponsible press releases put out by PFS-TECO and AMBICI,[2] unscrupulous importers and wholesalers have ignored this Court's injunction and shown a clear willingness to grasp for any excuse to continue business as usual. Forestwood and A2LA have stepped up to provide that excuse by operating a sham certification process that includes no qualification testing whatsoever. This problem is evident in recent communications Mr. Medellin received from key industry players that he describes in his declaration. For example, one of Southern Veneer's customers passed along a communication from a U.S. Brazilian importer or distributor:

> I've talked to several guys in the south FL market what they thought about the injunction. They all think it's b.s.----they tell me the Brazilian mills already have a new rating agency, F.I.I. [Forestwood], that is going to re-stamp existing panels and stamp future production.

Medillin Decl. ¶7. Similarly, a representative of major Brazilian plywood buyer Tumac Commodities Inc. said the following:

> I have been getting a lot of questions concerning the settlement. I think this letter from ABIMCI sums up any concerns regarding plywood from Brazil. Keep in mind, TECO had been accrediting only 12 mills at the time of the ruling. There are dozens more that are currently using other grading agencies that PS-1 (to Date) is allowed. All plywood produced before May 31st is on grade, and legally stamped PS1.

*Id.* These communications demonstrate the clear and devastating threat that the unabated influx of off-grade Brazilian plywood enabled by defendants' gross disregard for the integrity of the PS

---

[2] AMBICI is a purported trade association that is in actuality an instrument for the Brazilian mills' cartel behavior, including coordinated output reductions that would unquestionably amount to per se violations of the Sherman Act if carried out in the United States. Skipper Decl. Ex. C.

1 standard poses to plaintiffs' businesses. Mr. Medellin aptly sums up the fundamental problem plaintiffs now face:

> If the Brazilian plywood industry is allowed to simply substitute the now revoked grade stamps it received from either Timber Products Inspection, Inc. or PFS-TECO with that of Forestwood, the Plaintiff Coalition will have accomplished nothing in the prior case. Most significantly, the reputation of PS 1 structural plywood in the United States as a consistently strong and stiff building product for residential and commercial construction will be at risk.

*Id.* at ¶8. Plaintiffs' clearly evident loss of competitive positioning and reputational harm to their flagship product satisfies the irreparable harm prong of an injunction. *See Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1164 (11th Cir. 2018).

The severe harm plaintiffs will suffer if defendants' obviously illegal conduct is allowed to continue while this case is litigated simply cannot be remedied with money damages. First, plaintiffs' damages are in the tens of millions and, as a practical matter, are not recoverable from these defendants, which are relatively small companies that lack significant assets. *See Transcon. Gas Pipe Line Co.*, LLC, 910 F.3d at 1166 (11th Cir. 2018). More to the point, if the Brazilian plywood cartel and its network of importers and distributors are allowed to continue to profit from defendants' illegal false advertising while this case is litigated, the history of this case and Structural Plywood I teach that these bad actors will have no disincentive against simply standing up the next sham certifier when Forestwood is inevitably enjoined at trial.

Simply put, plaintiffs have the right to compete in a market that is uncorrupted by false advertising. The injury that plaintiffs continue to suffer by the repeated violation of that right by the Brazilian mill cartel and their certifying puppets can only be remedied by preliminary injunctive relief that puts an immediate to stop to this ongoing and outrageous scam.

C.     **The Balance of Equities Tips Sharply in Plaintiffs' Favor**.

The harm plaintiffs will suffer if an injunction does not promptly issue far exceeds any theoretical injury to defendants. Plaintiffs are scrupulous manufacturers who ensure at significant cost that the highly engineered wood products they produce are consistently on grade. Forestwood's failure (made possible by the sham accreditations issued by A2LA) to hold its Brazilian client mills to these same rigorous standards allows cheap, off-grade plywood to displace plaintiffs' on-grade plywood in the U.S. market. As a result, plaintiffs are suffering significant

harm in the form of lost market share, devalued prices, and the threat of lasting damage to their business. Conversely, defendants will suffer no harm at all if they are prohibited from continuing to operate an illegal certification scheme based on nothing more than debunked qualification tests performed under the blatantly deficient (and since terminated) certification programs administered by TPI and PFS-TECO.

As confirmed over and over by the APA, Clemson University, Blackwater, and TPI and PFS-TECO's own admissions and testing data produced during Structural Plywood I, Forestwood's client mills simply cannot consistently produce on-grade PS 1 plywood. Under these facts, there is no equitable justification to allow defendants' misconduct to continue while this case awaits trial.

### D. The Public Interest Strongly Favors an Injunction.

The public interest factor favors the movant if an injunction would not disserve the public interest. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In this case, the public has a strong interest in ensuring truth in advertising and preventing consumer deception in the marketplace. *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 734 (N.D. Ga. 1991) ("Consumer deception, by its very nature, is against the public interest."). Moreover, where, as here, the falsely advertised product at issue poses a threat to public safety, the public's interest in preventing false consumer information is especially acute. As Mr. Anthony explains in his declaration:

> This Court should be aware that there is a significant life safety issue resulting from noncompliant PS 1 plywood. In my opinion, given the low bending stiffness values found in the four sets of testing described above and the frequency of the glue bond failures reported during the PFS-TECO and TPI qualification tests and audits of Brazilian PS 1 panels, there is significant risk of catastrophic failure in particular applications utilizing PS 1 stamped plywood produced in southern Brazil. . . . These panels may fail catastrophically if the panels have inadequate bending strength or if the panels have inadequate glue bond strength. They may also fail catastrophically due to the inability of fasteners to adequately support a lower density panel. During high-wind events, panels with material properties lower than the criteria defined in the PS 1 standard put the public at risk of injury due to failure of the plywood panel.

Anthony Decl. ¶7. Conversely, there is, of course, no public benefit to allowing defendants to continue deceiving consumers into purchasing off-grade plywood that is unfit for its intended structural use.

### E. Bond Should be Set at $500,000.

Rule 65(c) requires a successful preliminary injunction movant to post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Forestwood certifies 17 Brazilian client mills to PS 1-19. Based on evidence of fees charged in the past by former certifiers PFS-TECO and TPI, plaintiffs estimate that certification generates approximately $18,000 in revenue per mill on an annual basis. Thus, the total annual revenue (without offset for variable costs) that Forestwood generates from its Brazilian plywood program is approximately $306,000. In addition, plaintiff estimates that A2LA generates approximately $60,000 in annual revenue through the accreditation of Forestwood to perform PS 1 certification and inspection. Plaintiffs are prepared to post a bond of $500,000, which is more than sufficient to account for any lost revenue that defendants might suffer during this litigation in the very unlikely event that the injunction were later deemed improvidently granted.

## IV. CONCLUSION.

For all of the foregoing reasons, plaintiffs' motion should be granted and a preliminary injunction should promptly issue.

### REQUEST FOR EXPEDITED HEARING

Given the critical importance and exigency of the issues raised in this motion, plaintiffs respectfully request that the Court hold a hearing at the earliest possible date. Plaintiffs believe that the Court's decision-making process would be significantly aided by oral argument. Plaintiffs estimate that two hours would be sufficient time to provide the Court with a full argument on the issues presented.

## CERTIFICATION OF PREFILING CONFERENCE

The undersigned counsel certifies that he has conferred in good faith by telephone with counsel for defendants A2LA and Forestwood, and defendants oppose this motion.

Dated this 14th day of June, 2022.

                          **HAGLUND KELLEY LLP**
*Attorneys for Plaintiffs*
2177 SW Broadway
Portland, OR 97201
(503) 225-0777 (T)
(503) 225-1257) F)

By *s./Michael E. Haglund*
**MICHAEL E. HAGLUND**, OSB No. 772030
mhaglund@hk-law.com (*Admitted Pro Hac Vice*)
**ERIC J. BRICKENSTEIN**, OSB No. 142852
ebrickenstein@hk-law.com (*Admittted Pro Hac vice*)
**CHRISTOPHER T. GRIFFITH**, OSB No. 154664
cgriffith@hk-law.com (*Admitted Pro Hac Vice*)


**NICKLAUS & ASSOCIATES, P.A.**
*Attorneys for Plaintiffs*
4651 Ponce de Leon Boulevard, Suite 200
Coral Gables, Florida 33146
Telephone: (305)460-9888
Facsimile: (305)460-9889

By: *s/ Edward R. Nicklaus*
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.: 138399
edwardn@nicklauslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to ECF registrants.

*Attorneys for Defendant*
*American Association for Laboratory Accreditation, Inc.:*

Peter R. Goldman
Nina C. Welch
NELSON MULLINS
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL  33394
Nina.welch@nelsonmullins.com
Herold.Labissiere@nelsonmullins.com

HAGLUND KELLEY LLP

*Attorneys for Plaintiffs*
2177 SW Broadway
Portland, OR 97201
(503) 225-0777 (T)
(503) 225-1257) F)

By *s./Michael E. Haglund*
**MICHAEL E. HAGLUND**, OSB No. 772030
mhaglund@hk-law.com, *admitted pro hac vice*
**ERIC J. BRICKENSTEIN**, OSB No. 142852
ebrickenstein@hk-law.com, *admitted pro hac vice*
**CHRISTOPHER T. GRIFFITH**, OSB No. 154664
cgriffith@hk-law.com, *admitted pro hac vice*

**NICKLAUS & ASSOCIATES, P.A.**

*Attorneys for Plaintiffs*
4651 Ponce de Leon Boulevard, Suite 200
Coral Gables, Florida 33146
Telephone:  (305)460-9888
Facsimile:   (305)460-9889

 By: *s/ Edward R. Nicklaus*
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.:  138399
edwardn@nicklauslaw.com