UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 22-60976-CIV-LEIBOWITZ/HUNT

U.S. STRUCTURAL PLYWOOD
INTEGRITY COALITION, *et al.,*

                Plaintiffs

v.

AMERICAN ASSOCIATION FOR
LABORATORY ACCREDITATION, INC.

                Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before this Court on Defendant's Motion for Summary Judgment. ECF No. 199. The Honorable David S. Leibowitz referred this matter to the undersigned for a report and recommendation. *See* ECF No. 212; *see also* 28 U.S.C. § 636(b); S.D. Fla. L.R., Mag. R. 1. Upon thorough review of the Motion, the Response, the Reply, the entire record, arguments of counsel at a June 5, 2024 hearing, and applicable law, the undersigned hereby recommends that the Motion be granted in part and denied in part for the reasons set forth below.

**Background**

This case concerns the importation of Brazilian plywood into the United States. Plaintiffs represent a coalition of U.S. plywood producers. Initially, this case involved two Defendants. The first, Defendant Forestwood Industries, Inc. ("FII"), was a company in charge of certifying that certain kinds of plywood imported from Brazil were up to the PS-1 standard, which indicates structural grade plywood suitable for use in the construction

of buildings and homes. FII issued stamps that were placed on Brazilian plywood indicating the plywood met the PS-1 standard. Defendant American Association for Laboratory Accreditation, Inc., ("A2LA") was the accrediting agency for FII.

Plaintiffs initially filed this case alleging malfeasance on the part of both Defendants, seeking both damages and an injunction to prevent FII from certifying Brazilian plywood and A2LA from certifying organizations such as FII as being able to do so. Over the course of this case, it was discovered that FII likely violated the conditions for accreditation. FII's accreditation was suspended, and FII ultimately exited the PS-1 plywood certification business permanently. The Court dismissed FII from this case with prejudice on August 28, 2023. ECF No. 169.

After a prolonged stay while the sawdust settled, Plaintiffs proceeded with their claims against the remaining Defendant, A2LA. Plaintiffs now allege that A2LA committed direct false advertising under the Lanham Act, in that it knew or should have known that its certificate of accreditation was false, as well as contributory false advertising based on FII's violations of the Act. Additionally, Plaintiffs allege that A2LA was negligent in its accreditation, leading to millions of dollars in damages to Plaintiffs. Plaintiffs also seek to permanently enjoin A2LA from continuing to issue such accreditation. A2LA now seeks summary judgment on all of Plaintiffs' claims.

**Legal Standard**

For purposes of a motion for summary judgment, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating that there is no "requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim"). If that burden has been met, the burden shifts to the nonmoving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether there are any genuine issues of material fact, this Court may not weigh evidence or make any credibility determinations. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). Instead, this Court is required to resolve all reasonable doubts in favor of the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 660 (2014); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (citing *Williams v. City of Dothan*, 745 F.2d 1406 (11th Cir. 1984)). Summary judgment is not appropriate where "a rational trier of fact could find a verdict for the nonmoving party under the substantive evidentiary standard." *Tipton*, 965 F.2d at 999.

**Analysis**

Defendant A2LA moves for summary judgment arguing, largely, that Plaintiffs' allegations pass neither the legal nor smell tests. Defendants argue that Plaintiffs are trying to bootstrap the Lanham Act, 5 U.S.C. § 1051 et seq., to rope in an accreditation

entity that has no plausible motive, economic or otherwise, to conspire with anyone responsible for the importation of allegedly substandard Brazilian plywood.  Defendant argues that Plaintiffs fail to identify how it could possibly owe plywood mills in the United States, mills to which Defendant has no relationship or connection of any kind, any duty of care to protect their financial interests.  Defendant further notes that Plaintiffs here seek permanent injunctive relief based on the mere possibility Defendant might someday accredit another entity that certifies Brazilian plywood.

Plaintiffs respond that their case is simple.  They allege that Defendant issued, and later renewed, accreditation for FII that FII needed to gain acceptance under U.S. building codes as an organization qualified to certify plywood to the PS-1 standard.   By issuing the accreditation, Plaintiffs argue, Defendant warranted to the world that FII was qualified and competent, and that its PS-1 stamps could be trusted.  FII, Plaintiffs allege, was neither competent nor qualified, and issued fraudulent PS-1 certificates for profit to nearly two dozen plywood mills in southern Brazil without any evidence that the mills consistently produced on-grade plywood.

Plaintiffs maintain that Defendant was adequately warned and presented with evidence of FII's incompetence and fraud, but nonetheless maintained FII's accreditation for nearly two years.  Plaintiffs argue that Defendant's accreditation of FII ultimately allowed massive volumes of bad plywood bearing FII's grade stamps to flood the U.S. market, causing a reduction in the price of Plaintiffs' competing, on-grade PS-1 plywood.  Had Defendant acted on the warnings, Plaintiffs argue, they would not have suffered anything close to the almost $74 million in claimed lost profits that they now seek to recover.

Defendant replies that Plaintiffs' attempt to hold an accreditation body liable for both the acts of a certification body it accredits, as well as the acts of the companies the certification body certifies, risks making accreditation bodies liable for any malfeasance down the certification line merely through the act of accreditation. This, according to Defendant, would be devastating to the industry and cannot be the law.

As an initial note, both sides acknowledge a prior decision in a very similar case, *U.S. Structural Plywood Integrity Coal. v. PFS Corp.*, No. 19-62225-CIV-ALTMAN/HUNT, 2022 WL 953150 (S.D. Fla. Mar. 30, 2022). In that case, Judge Roy K. Altman found that almost identical claims against PFS-TECO, a certification body and the equivalent of FII here, could survive summary judgment. Plaintiffs argue that this decision (hereinafter "*Plywood I*") basically decides all the issues currently before us. Defendant, on the other hand, argues that *Plywood I* is irrelevant, in that it only pertained to the certification body – FII's counterpart – and not the Defendant-equivalent accreditation body, which settled on non-monetary terms early in that litigation. Although it is true that there are no rulings in *Plywood I* on Plaintiffs' claims against an accreditation body and whether such claims could survive a motion to dismiss or a motion for summary judgment, the undersigned nonetheless finds much of the analysis relevant to the current case.

There are four main arguments in Defendant's Motion. Each will be addressed in order.

**I.   Lanham Act Standing**

Defendant first contends Plaintiffs cannot satisfy the "zone of interests" standing test outlined in *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), in that Plaintiffs' alleged harm to their plywood prices from the importation of

Brazilian plywood does not have a sufficiently close connection to Defendant's accreditation of FII. Essentially, Defendant argues, Plaintiffs cannot show that Defendant's accreditation was a proximate cause of Plaintiffs' alleged injuries.

Additionally, Defendant argues that, per *ThermoLife International, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022), Lanham Act standing requires "something very close to a 1:1 relationship between a plaintiff's lost sales and the sales diverted to a defendant." *Id.* at *2 (internal citation and quotations omitted). Defendant notes that in the *ThermoLife* case, the court held that because the defendant operated at a different level of the supply chain than the plaintiff, the allegations were too speculative to establish proximate cause. The same analysis should apply here, Defendant argues.

Plaintiffs respond that *Lexmark* held that proximate cause exists when the defendant's consumer deception is a direct cause of plaintiffs' commercial injury. Without Defendant's accreditation, Plaintiffs contend, FII would not have been able to issue its PS-1 stamps to the off-grade Brazilian mills and Plaintiffs would not have been injured by unfair competition from that fraudulently-certified plywood. Plaintiffs argue that they have Lanham Act standing because Defendant's deception of consumers regarding the validity of FII's PS-1 stamps was, indeed, a proximate cause of Plaintiffs' commercial injury.

As for *ThermoLife*, Plaintiffs observe that the decision nonetheless reaffirmed that "direct competition is not required for proximate cause, if a plaintiff can show that any false advertising 'necessarily injured' its business." *ThermoLife*, 2022 WL 612669 at *2 (citations and quotations omitted). Plaintiffs argue that Defendant's accreditation of FII necessarily injured Plaintiffs by enabling FII to falsely certify Brazilian plywood that

6

corrupted Plaintiffs' markets and caused them to lose profits, and thus the accreditation was a proximate cause of Plaintiffs' injuries, which is all that *Lexmark* and the Lanham Act require.

Defendant replies that *Lexmark* is clear that a plaintiff must still show injury "flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l*, 572 U.S. at 138. Defendant contends that there is no evidence that its accreditation of FII cast aspersions on Plaintiffs' business or directly caused Plaintiffs $74 million in damages. Indeed, Defendant argues that there is no evidence in this action that its accreditation certificate communicated anything about Plaintiffs' product. Because Defendant's accreditation of FII makes no representations about Plaintiffs' plywood, it argues, Defendant's conduct does not come within the zone of interests applicable to the Lanham Act.

In *Plywood I*, the court noted the general principle recognized under *Lexmark* that "bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Plywood I*, 2022 WL 953150, at *9 (quoting *Lexmark Int'l*, 572 U.S. at 133). The *Plywood I* court cited *Lexmark* for the notion that for Lanham Act false-advertising claims "the zone of interests the statute protects includes 'a person engaged in commerce within the control of Congress whose position in the marketplace has been damaged by [the defendant's] false advertising.'" *Id*. (quoting *Lexmark Int'l*, 572 U.S at 137). Lost sales, such as Plaintiffs here allege, are "precisely the sorts of commercial interests the [Lanham] Act protects." *Id.* (quoting *Lexmark Int'l*, 572 U.S at 137).

7

In *Plywood I,* the court found that the requirements necessary to establishing Lanham Act standing had been met by the actions of the equivalent of FII, via its licensing of the PS-1 stamps.  There are several obvious similarities to this case.  Here, as in *Plywood I*, Plaintiffs have retained several experts,[1] who opine on "the close correlation between the influx of Brazilian structural plywood into the U.S. market, the concomitant decrease in the price for structural plywood in the United States, and a concurrent decline in the Plaintiffs' annual sales." *Id.* at *10.   Additionally, there are declarations attesting to a marked decline in U.S. plywood suppliers' "annual sales that corresponds to an increase in the supply of Brazilian plywood in the market," as well as attestations that PS-1 stamps serve as "both an advertisement and a certification that the plywood meets the requirements of the [PS-1] grade standards." *Id.* at *12. All of these would likely adequately support a finding that Plaintiffs had standing to sue FII, because it was their stamp on the plywood.  But what about the company that gave permission to FII to issue the stamp in the first place?

The *Plywood I* court observed that it was important that "Plaintiffs allege that the stamps themselves cause consumers to purchase Brazilian plywood. It's the stamps, in other words—and not some intervening [communication] about the plywood—that (according to the Plaintiffs) deceived consumers into thinking that the plywood they were buying was [PS-1] compliant." *Id.* at *16.   Here, arguably, there was an intervening circumstance between the actions of the accrediting body and the alleged harm to

---

[1] The undersigned should note that Defendant has filed a *Daubert* motion challenging Plaintiffs' reliance on these experts.  The Court held an evidentiary hearing on that Motion but has not yet ruled.  Should any of those experts be stricken, the undersigned recommends that Defendant be allowed to reraise summary judgment arguments that were contingent on those experts.

consumers – namely, the malfeasance of FII.  Plaintiffs attempt to overcome this by pointing out that Defendant was made aware early in the accreditation process of FII's potential malfeasance and ignored all the warnings.  Plaintiffs point to deposition testimony by Defendant's own employee, Jonathan Furman, where Furman acknowledged the mistakes made in the accreditation process.

Viewing the facts in the light most favorable to Plaintiffs, under these circumstances, the undersigned finds that Plaintiffs have effectively alleged that Defendant's actions proximately caused the harms alleged.  But for Defendant's faulty accreditation processes, FII would have never been able to issue the licenses.  And, following *Plywood I*, the license issuance was clearly covered under the Lanham Act's zone of interests analysis.  Accordingly, Plaintiffs have standing to sue under the Lanham Act, and Defendant's Motion should be denied on this point.

## II.     Lanham Act elements

### a. Direct False Advertising

Having established that Plaintiffs can indeed bring their claims, the undersigned now turns to the argument that Plaintiffs have failed to present facts adequate to establish their claims.  To prevail on the Lanham Act claim for direct false advertising, Plaintiffs must establish that "(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement." *HiTech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018).

Defendant also argues that Plaintiffs must establish additional Eleventh Circuit requirements that Defendant's conduct must constitute commercial advertising or promotion. To establish commercial advertising or promotion, Plaintiffs must establish that the conduct constitutes "(1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (internal citations and quotations omitted).

Defendant contends Plaintiffs' false advertising Lanham Act claim fails because: (1) A2LA's conduct does not constitute "commercial advertising or promotion" because (a) A2LA's accreditation of FII is not commercial speech, (b) A2LA is not in commercial competition with Plaintiffs, (c) the accreditation of FII was not for the purpose of influencing consumers to buy A2LA's product, and (d) A2LA's accreditation of FII was not disseminated to the relevant purchasing public to constitute advertising. Defendant also argues that (2) A2LA's accreditation of FII was not a false statement; and (3) A2LA's accreditation of FII did not have a material effect on consumers' purchasing decisions.

Plaintiffs respond that Defendant's false accreditation of FII is commercial advertising, in that Defendant published a Certification of Accreditation proclaiming FII competent to license that plywood met the PS-1 standard. That Defendant was not in direct competition with Plaintiffs is irrelevant, Plaintiffs argue, in that commercial competition is no longer required.

Likewise, Plaintiffs argue that whether Defendant's speech itself diverted sales is also irrelevant, in that all that is required is that Defendant's accreditation of FII served a clear commercial purpose.  That purpose, according to Plaintiffs, was to communicate to consumers that plywood bearing the FII stamp meets the PS-1 standard as determined by an accredited certification body. Plaintiffs essentially argue that because the accreditation was false and was disseminated to the necessary extent within the industry it materially influenced consumers and thereby caused Plaintiffs commercial injury. Therefore, according to Plaintiffs, it is actionable under the Lanham Act.

Defendant replies by reiterating its position that its accreditation of FII simply does not constitute commercial advertising or promotion. Further, Defendant contends that there is no evidence of how A2LA's accreditation of FII was made for the purpose of influencing consumers.  Additionally, Defendant argues that its "advertisement," such as it was, was not disseminated. Finally, Defendant notes that there is no evidence that A2LA's accreditation of FII had a material effect on consumers' purchasing decisions.

It is on this last part that the undersigned now focuses.  Plaintiffs argue that it is enough that there was a communication to consumers that plywood bearing the FII stamp met the PS-1 standard, because FII had been falsely accredited by Defendant.  "Where it is undisputed that PS-1 requires accreditation for a grade stamp to be recognized as valid, it follows *a priori* that a PS-1 certifier's accreditation is material to consumers," according to Plaintiffs.  ECF No. 210 at *20.

The undersigned finds Plaintiffs' argument lacking.  To "succeed on a claim of false advertising, the plaintiff must establish that the *defendant's* deception is likely to influence the purchasing decision." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,

11

299 F.3d 1242, 1250 (11th Cir. 2002) (emphasis added).  There is simply no evidence before the Court that the accreditation itself would have had any influence on consumers' purchasing decisions.  While the PS-1 stamp was certainly material, what consumers relied on was FII's certification of the product, rather than Defendant's certification of FII.  All that Plaintiffs have shown is that the stamp was important.  Had, for instance, FII simply created its own stamp without Defendant's accreditation and started shipping out plywood, it is likely the purchasing decisions would have been the same.  This is not to say that an accreditor cannot be liable under Plaintiffs' theory.  But on the facts before the Court, they have not adequately put forward facts demonstrating that liability here.  Defendant's Motion should therefore be granted on this point.

    *b.  Contributory false advertising*

This finding does not leave Plaintiffs completely in the cold, however.  In addition to Plaintiffs' direct false advertising claim, Plaintiffs have also alleged a contributory false advertising claim against Defendant under the Lanham Act.  Unlike direct false advertising, to prevail on a contributory false advertising claim, a plaintiff must prove (1) that a third party directly engaged in false advertising that injured the plaintiff; and (2) that the defendant contributed to that conduct either through knowing inducement, or causing the conduct, or by materially participating in it. *See Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 624 F. App'x 81 (4th Cir. 2015); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).

    Defendant here first argues that Plaintiffs' contributory false advertising claim fails because Plaintiffs cannot prove that FII violated the Lanham Act.  Defendants contend that, because FII has been dismissed from this case with prejudice, and because that

dismissal with prejudice operates as a final judgment, Plaintiffs cannot legally prove that FII directly engaged in false advertising. Additionally, Defendant argues that that there is no evidence that it knowingly induced, caused, or materially participated in any purported false advertising.

Plaintiffs respond that it is clear that FII engaged in direct false advertising, and the fact that FII was dismissed from this case is simply a red herring. Plaintiffs argue that it is also clear that Defendant materially participated in FII's false advertising. Plaintiffs contend that FII's false advertising would not have been possible without Defendant's accreditation, which is the necessary "product" that conferred legitimacy on FII's licensed PS-1 stamps.

Defendant replies the law is clear that a voluntary dismissal with prejudice, such as occurred here regarding FII, renders FII the prevailing party, and thus the argument that it engaged in false advertising is legally foreclosed. Further, Defendant contends that there is simply no evidence demonstrating that it knowingly participated in any purported scheme to defraud. Defendant's accreditation of FII, according to Defendant, constituted no more than an ordinary business relationship, and Defendant had no plausible economic motive to conspire with FII.

The undersigned finds that there is ample evidence, including from Defendant's own manager, that FII engaged in false advertising. Indeed, FII in this case is no different from the defendant in *Plywood I*, where the court easily found the elements adequately alleged and supported. Plaintiffs have adequately established "the elements of a direct false advertising claim against" FII for the purpose of summary judgment. *Estee Lauder,*

797 F.3d at 1277.  That Plaintiffs are legally foreclosed from bringing a claim against FII as a result of the dismissal has no effect on this.

As to whether Defendant contributed to that conduct, again, Plaintiffs have introduced evidence that Defendant went forward with the accreditation despite ample warnings that FII would be unable to properly certify the plywood.  Additionally, there is evidence that Defendant failed to follow its own procedures in the accreditation process, despite these warnings.  This is enough for Plaintiffs' contributory false advertising claim to survive summary judgment, and Defendant's Motion should be denied on this point.

### III.     Negligence

Defendant next argues that it owes no duty of care to Plaintiffs, in that "a party has no legal duty to prevent the misconduct of third persons." *Dorsey v. Reider*, 139 So. 3d 860, 864 (Fla. 2014).  Defendant points out that an "injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm."  *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. 4th DCA 2022) (quoting *Grunow v. Valor Corp. of Florida,* 904 So. 2d 551, 556 (Fla. 4th DCA 2005)). Defendant argues that Plaintiffs have failed to allege or show any duty Defendant owed to Plaintiffs, which Defendant argues is fatal to Plaintiffs' claim.   Plaintiffs respond that Florida's "foreseeable zone of risk" test asks only whether a defendant's conduct created a broader zone of risk that poses a general threat of harm to others, and that Plaintiffs here fall within that broader zone.

There are four elements to a negligence claim under Florida law:

> "[a] duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against

14

unreasonable risks"; (2) "[a] failure on the defendant's part to conform to the standard required"—what we call "a breach of the duty"; (3) "[a] reasonably close causal connection between the conduct and the resulting injury"; and (4) "[a]ctual loss or damage[.]"

*Plywood I,* 2022 WL 953150 at *38 (quoting *O'Donnell v. United States*, 736 F. App'x. 828, 831 (11th Cir. 2018)).

As Plaintiffs point out, the duty element focuses on "whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). "When a defendant's conduct creates a foreseeable zone of risk, 'a legal duty will ordinarily be recognized to ensure the conduct is carried out reasonably.'" *Id.* (quoting *McCain*, 593 So. 2d at 502).

In *Plywood I*, the court found that "Defendants' alleged failure to perform the core responsibilities of testing, inspecting, and certifying a structural product creates a general and foreseeable risk of harm." *Id.* at *39. That court found it "foreseeable … that the act of facilitating the importation of cheaper, sub-standard products would cause economic injuries to domestic manufacturers." *Id.*

Although Defendant here is once removed from the defendant in *Plywood I*, the undersigned sees little difference in the analysis. Here, as there, Defendant's alleged failure to perform the core responsibilities of accreditation created a general and foreseeable risk of harm. Here, as there, the harms alleged by Plaintiffs fall within that zone. The undersigned therefore finds that Plaintiffs' negligence claim should survive summary judgment, and Defendant's Motion should be denied on this point.

15

## IV.     Request for Injunctive Relief

Finally, Defendant argues that Coalition Plaintiff lacks associational standing to sue on behalf of its members, and the other Plaintiffs lack standing to seek a permanent injunction.  Defendant points to *Connecticut State Dental Association v. Anthem Health Plans, Inc*., 591 F. 3d 1337 (11th Cir. 2009), where an association sought declaratory and injunctive relief but also requested compensatory and punitive damages on behalf of its members.   There, the court observed that an association cannot proceed on behalf of its members when claims for monetary relief are involved. *Id.* at 1354.

Defendant, citing *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 734 (11th Cir. 2018), further argues that Plaintiffs cannot seek permanent injunctive relief where, as here, the need for any injunctive relief has completely dissipated, and Plaintiffs have an adequate remedy at law. Likewise, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if, unlike here, the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Shotz v. 26 Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

Plaintiffs respond that the Coalition Plaintiff, unlike the plaintiff in *Connecticut State Dental*, does not seek damages independently or on behalf of its members.  Instead, each of the individual plywood company Plaintiffs seeks damages on its own behalf, and the Coalition seeks only injunctive relief.  The Coalition argues that there is no evidence that Defendant has reformed its procedures to correct the failings that contributed to its false accreditation of FII, nor is there any basis to conclude that Defendant would not falsely accredit another unqualified PS-1 certifier in the future, and thus an injunction is needed.

16

> A court should only grant injunctive relief when the movant shows that (1) there is a substantial likelihood of success on the merits, (2) irreparable injury will be suffered unless an injunction is issued, (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) if issued, the injunction would not be adverse to the public interest.

*Lyman v. Excel Impact, LLC*, No. 23-23767-CIV-BLOOM/TORRES, 2024 WL 982562, at *2 (S.D. Fla. Feb. 28, 2024) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018)).

The undersigned agrees that there is nothing before the Court, other than Plaintiffs' speculation, that would justify injunctive relief. The accreditation at issue in this case has been withdrawn, and Defendant has issued no further accreditations. There is no evidence of any imminent threat that they will do so, or evidence that Defendant would do so improperly. In short, the request for injunctive relief in this case has long been moot and remains so.

Defendant in its reply appears to concede that the individual Plaintiffs could seek damages on behalf of their surviving claims, and thus they should be allowed to do so. Defendant's Motion should therefore be granted as to Plaintiffs' injunctive relief request, and this case should only proceed with those Plaintiffs for whom damages remain available.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned hereby RECOMMENDS that Defendant's Motion for Summary Judgment, ECF No. 199, be GRANTED IN PART AND DENED IN PART.

It should be granted to the extent that summary judgment should be entered in Defendant's favor on Plaintiffs' direct false advertising claim, as well as Plaintiffs' request for injunctive relief.

The Motion should otherwise be denied.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 6th day of August 2024.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
  The Honorable David S. Leibowitz
  All Counsel of Record