IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:22-cv-60976-LEIBOWITZ/HUNT

U.S. STRUCTURAL PLYWOOD
INTEGRITY COALITION, an unincorporated
association, SCOTCH PLYWOOD CO., INC.,
an Alabama corporation, VENEER PRODUCTS
ACQUISITIONS, LLC, a Delaware limited
liability company doing business as
SOUTHERN VENEER PRODUCTS,
SOUTHERN VENEER SPECIALTY
PRODUCTS, LLC, a Georgia limited liability
company, HUNT FOREST PRODUCTS,
LLC, a Louisiana limited liability company,
FRERES LUMBER CO., INC., an Oregon
corporation, MURPHY COMPANY, an
Oregon corporation, SDS LUMBER LLC, a
Washington limited liability company, and
SWANSON GROUP, INC., an Oregon
corporation,

      Plaintiffs,

v.

AMERICAN ASSOCIATION FOR
LABORATORY ACCREDITATION, INC.,
a District of Columbia non-profit corporation,

      Defendant.
_____/

**DEFENDANT, AMERICAN ASSOCIATION FOR
LABORATORY ACCREDITATION, INC.'S TRIAL LEGAL MEMORANDUM**

Defendant, American Association for Laboratory Accreditation, Inc. ("A2LA"), files this

Trial Legal Memorandum pursuant to Local Rule 16.1(J), and states as follows:

## I. WHETHER PLAINTIFFS HAVE STATED A VIABLE NEGLIGENCE CLAIM SHOULD BE REEXAMINED BEFORE THE VENIRE IS EMPANELED

Plaintiffs maintain, as they always have, that a negligence duty of care arises because the mere act of accreditation is a prerequisite to the importation of PS 1 plywood; ergo it opens the door to a potential improper certification of plywood mills thereby potentially allowing for importation of off grade plywood that unfairly competes in the plywood market with Plaintiffs on-grade plywood. However, as A2LA has noted in its record filings, none of the six complaints (between this case and *Plywood I*) contain the word "duty" or identifies, through allegations in their prior or pending complaints, how an accreditation body can owe a duty of care to Plaintiffs. On the other hand, A2LA has argued that when, as here, a plaintiff seeks the recovery of only economic loss, unaccompanied by bodily injury or property damage, the existence of a duty must be examined under something more than the traditional reasonably foreseeable risk test. Although the existence of a duty does not require direct, one-on-one privity, it does require extraordinary circumstances or special relationship between the plaintiff and the defendant where the services provided by the defendant are intended to substantially and primarily benefit the Plaintiff.

The question of whether A2LA could owe a duty of care to plywood mills was vigorously contested at oral argument before Magistrate Judge Hunt in connection with the Report and Recommendation that he would subsequently issue denying A2LA's motion for summary judgment on the negligence claim. At that time, A2LA argued that a *special relationship* was required, relying primarily on *Florida Building Inspection Services, Inc. v. The Arnold Corporation,* 660 So. 2d 730 (Fla. 3d DCA 1995).[1] As page 57 of the summary judgment hearing

---

[1] This case was also cited in A2LA's summary judgment briefings, including in its Objection to Magistrate Judge Hunt's Report and Recommendation on A2LA's Motion for Summary Judgment. [ECF 219 at 14–15]; [ECF 233 at 16].

1

transcript reflects [ECF 253 at 57], A2LA's counsel argued that *Florida Building Inspection* "was based on the absence of any special relationship that would impose a duty by–would impose a duty of care owed by the defendant to the plaintiff." Plaintiffs countered, by arguing that the law cited by A2LA was based on the economic loss doctrine that was implicitly abolished by *Tiara Condo Ass'n, Inc., v. Marsh & McLennan*, 110 So.3d. 399 (Fla. 2013). *Significantly, counsel for Plaintiffs conceded that while plaintiff consumers of PS 1 plywood producers were somehow owed a duty of care to not injure their commercial sales, consumers of the allegedly off grade plywood that were harmed by that plywood were not owed a duty of care.* [ECF 253 at 61:23-24] [Mr. Haglund: "We don't believe consumers would have a [negligence] claim against A2LA."]. If Plaintiffs admit A2LA does not owe consumers a duty of care, then how could it logically follow that A2LA owes the even-further-removed Plaintiffs a duty of care?

In its Objection to Magistrate Judge Hunt's Report and Recommendation on A2LA's Motion for Summary Judgment, A2LA also cited *Honig v. Kornfeld*, Case No. 18-80019-CV, 2019 WL 1505426, at *3 (S.D. Fla. Mar. 14, 2019). *See* [ECF 233 at 16] citing *Honig*, 2019 WL 1505426, at *3 (citing *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990)) ("[T]he Court felt it necessary to continue to constrain liability to those persons or classes of persons whom an accountant 'knows' will rely on his opinion rather than those he 'should have known' would do so because it takes into account the fact that an accountant controls neither his client's accounting records nor the distribution of his reports."). Following this Court's Order Adopting Magistrate's Report and Recommendation [ECF 250], A2LA sought a limited clarification of that Order [ECF 250], which it articulated as follows: . . . the application (or not) of the standard set forth in cases like *Florida Building Inspection Services, Inc. v. The Arnold Corporation,* 660 So. 2d 730 (Fla. 3d DCA 1995), *First Florida Bank*, *supra*, and *First American*

*Title Insurance Co., Inc. v. First Title Service Co. of the Florida Keys Inc.*, 457 So. 2d 467 (Fla. 1984) (favorably cited in *First Florida Banks*). A2LA's Motion for Clarification was fully briefed by the parties, and the Court heard limited argument on it at a status conference on December 12, 2024.

In its Order on Clarification [ECF 282], this Court made two critical determinations: (1) that *Tiara Condo Ass'n, Inc. v. Marsh & McLennan, supra,* did not overrule or modify any of the cases cited by A2LA [*id*. at n. 2] and (2) that whether a duty existed might have to be further examined in view of the Eleventh Circuit's then-recent decision in *Marino v. Phaidon Int'l, Inc.*, Case No. 24-10113, 2024 WL 4298164 (11th Cir. Sept. 26, 2024). In *Marino*, the Eleventh Circuit affirmed the dismissal of a negligence claim based purely on economic harm that did not identify any *special relationship* or *extraordinary circumstance*. This Court further indicated that while it was affirming the Magistrate's Report and Recommendation based on *McCain v. Fla. Power Corp.*, 593 So.2d 500 (Fla. 1992) and *Dorsey v. Reider,* 139 So. 3d 860 (Fla. 2014), A2LA may be able to argue that the special relationship and extraordinary circumstance test applies on its Rule 50 motion for judgment as a matter of law.[2]

It is without dispute that Plaintiffs, across 2 cases and 6 complaints, have not identified any special relationship or extraordinary circumstance justifying a negligence claim based purely on economic harm. And, A2LA repeatedly pointed this out, so Plaintiffs were hardly blind-sided by the argument. The foregoing establishes that both parties have had ample opportunity to brief –and

---

[2] Subjecting A2LA to an ordinary negligence standard, without requiring Plaintiffs to demonstrate that there was a special relationship whereby A2LA intended to primarily benefit the Plaintiffs, would raise implied preemption issues, particularly in light of the summary judgment granted in A2LA's favor on the direct Lanham Act claim. *Moran v. Edie Parker, LLC*, 563 F. Supp. 3d 671 (E.D. Mich. 2021) (dismissing state law right of privacy claim alleged alongside Lanham Act trademark claim under implied preemption analysis); *In re Jackson*, 972 F. 3d 25 (2nd Cir. 2020).

3

did brief—the question of duty, with Plaintiffs' primary argument being that the cases applying the special relationship or extraordinary circumstance test were effectively overruled by *Tiara*. But that argument has been rejected by the Court.

Whether a negligence duty is owed, and if so, the nature of that duty, unquestionably affects the nature of the evidence presented at trial. It also may dictate how the jury is instructed, including whether, as A2LA asserted in its Motion for Clarification, the proper instruction is something more akin to *Standard Jury Instructions-Civil Cases (No. 02-1)*, 828 So. 2d 377, 380, 381 (Fla. 2002) (revising jury instruction on "FALSE INFORMATION NEGLIGENTLY SUPPLIED FOR THE GUIDANCE OF OTHERS" (Restatement § 552)). The parties should know in advance of picking a jury and presenting their cases whether a negligence claim will go to the jury. As duty is a question of law, and failure to state a claim may be raised at any time under Rule 12(h)(2)(c), A2LA requests that the Court consider taking the question of whether Plaintiffs have stated a viable claim for negligence before the venire is empaneled.[3]

## II. PLAINTIFFS DID NOT HAVE STATUTORY STANDING TO SUE FII UNDER THE LANHAM ACT.

The Court, through its Order Adopting Magistrate's Report and Recommendation [ECF No. 250], granted summary judgment on Plaintiffs' direct false advertising claim against A2LA. On summary judgment, A2LA did not brief the specific question of whether Plaintiffs had statutory standing to sue FII under the Lanham Act. If not, then their contributory Lanham Act claim against A2LA must necessarily fall. The Lanham Act was intended by Congress to redress injury from unfair competition resulting in injury to sales or reputation to persons engaged in commerce, including, as alleged here, injury proximately caused by "false advertising." *Lexmark Intern., Inc.*

---

[3] A2LA maintains that the absence of a duty is also mandated by *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324 (11th Cir. 2020) because PS 1 is a voluntary product standard.

4

*v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). The United States Supreme Court indicated that the zone-of-interests test and proximate-cause requirement guide who may sue under the Lanham Act. The zone of interests test requires that a plaintiff allege that, as a result of a violation of the Lanham Act (false advertising to gain a competitive advantage), that it suffered an injury to sales or reputation by others engaged in commerce. *Id.* at 131–32. A plaintiff must show injury "flowing **directly** from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to **withhold trade from the plaintiff**." *Id.* at 133 (emphasis supplied); *see also Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.* 758 F.3d 1069, 1071-72 (9th Cir. 2014).[4]

The instant action is hardly the paradigmatic false advertising claim, as would be the case if the Plaintiffs were suing the Brazilian plywood mills for falsely stamping their plywood as PS 1 compliant. That is not to say that the Lanham Act, post *Lexmark,* requires direct competition. It does not. The question then is what level of competition is required for the violation of a statute designed to proscribe unfair competition. A2LA submits that the Lanham Act's zone of interest test requires that the plaintiff and defendant must, at the end of the day, be vying or competing for the same consumer dollars. Stated another way, the false statement must be designed to influence a consumer to purchase the defendant's good or services, and not the plaintiffs. *See Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 4583625 (D. Ariz. Aug. 10, 2020). The timeshare advocate promoting its ability to get timeshare customers out of their arrangements

---

[4] Plaintiffs do not contend that they lost sales. Instead, they argue that their profit margins were impacted because the supply of PS 1 plywood was increased during the damage period through the importation of Brazilian PS 1 plywood. Putting aside whether, consistent with economic theory, you can have one (diminished profits) without the other (lost sales), attributing losses to market forces only, as Plaintiffs do here, makes demonstrating proximate cause a far greater challenge than the paradigmatic false advertising claim based upon the diversion (i.e. lost) of sales.

5

with the sellers of timeshare interests may be offering entirely different products or services but what keeps them within the Lanham Act's zone of interest (and in some form of competition with each other) is that they are vying for the same consumer dollars. The timeshare advocate says "pay me," instead of paying your timeshare fees.

A2LA submits that the connection between FII (a certifier) is simply too far removed from the plaintiffs to come within the Lanham Act's zone of interest test. They do not compete or vie for the same consumer dollars. But, to borrow a phrase from Magistrate Judge Hunt, Plaintiffs were "not left in the cold."[5] They had asserted and ultimately elected to dismiss with prejudice[6] a paradigmatic contributory Lanham Act liability against FII based upon its aiding and abetting the Brazilian mills which affix the PS 1 stamps to their plywood. Statutory standing under the Lanham Act is a question of law for the Court and goes to whether Plaintiffs can state a viable cause of action for contributory liability against A2LA. This question of law can be raised at trial under Rule 12(h)(2)(c).

### III.   FOR PURPOSES OF CONTRIBUTORY LIABILITY, MATERIAL PARTICIPATION REQUIRES CULPABLE INTENT

Contributory liability requires evidence of **concerted** action by tortfeasors where one tortfeasor committing the tortious act is aided and abetted by the other tortfeasor who renders substantial assistance and encouragement in the commission of the tortious act. *See Parker v. Google, Inc.,* 422 F. Supp. 2d 492, 498–99 (E.D. Pa. 2006) (stating that contributory liability presupposes that the defendant is **acting in concert** with infringer); *Live Face on web, LLC v.*

---

[5] They also could have sued—and still could sue—the Brazilian plywood mills and the distributers and retailers responsible for making Brazilian plywood available for sale in the United States.

[6] In its Motion for Summary Judgment, A2LA unsuccessfully argued that the dismissal of FII **with prejudice** precluded a finding of direct Lanham Act liability, which in turn precluded the finding of contributory Lanham Act liability. [DE 199 at 21–22].

*Control Group Media Co.* 150 F. Supp 3d 489, 499 (E.D. Pa. 2015) (same); *BMG Rights Mgmt. (Us) LLC v. Cox Commc'ns, Inc.* 881 F.3d 293, 308–09 (4th Cir. 2018) (comparing contributory liability to aiding and abetting liability); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005) (stating that liability for inducement of infringement exists where a party knowingly aids and abets another's direct infringement) (citing *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed Cir. 1988)); *Roberts v. BroadwayHD LLC*, Case No. 19 CIV. 9200 (KPF), 2022 WL 976872, at *11 (S.D.N.Y. Mar. 31, 2022) (stating that contributory infringement is based on the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the primary tortfeasor and that the participation must be "substantial"); *Duty Free*, 797 F.3d at 1279 (noting the absence of any evidence of concerted action between the defendant alleged to have made the false advertisement and the defendant alleged to be contributorily liable for it); *Wolk v. Kodak Imaging Network, Inc.* 840 F. Supp. 2d 724, 751 (S.D.N.Y. 2012) (granting summary judgment in contributory copyright infringement case where there was no evidence presented suggesting defendant sought to encourage infringement or promote its service as a means for doing so). In other words, contributory liability is an intent-based tort that looks to the alleged tortfeasor's state of mind. *See Duty Free*, 797 F.3d at 1277; *see Epic Tech, LLC v. Raleigh Startup Sols. LLC*, Case No. 5:23-CV-136-D, 2023 WL 9051298, at *4 (E.D. N.C. Dec. 29, 2023) (explaining that contributory liability requires intentional conduct or willful blindness, and negligence does not suffice); *BMG*, 881 F.3d at 309.[7]

---

[7] The U.S. Supreme Court recently examined, albeit in a different context, what must be established to impose civil liability on a defendant for aiding and abetting and concluded that the fundamental question is whether a defendant "**consciously, voluntarily and culpably** participate[d] in or support[ed] the relevant wrongdoing." *Twitter, Inc., v. Taamneh*, 598 U.S. 471, 505 (2023) (emphasis supplied).

One of the ways contributory liability can be established is through *material participation* in the false advertising, although some courts have questioned whether material participation is better suited to trademark infringement cases. Regardless, material participation necessarily means something more than performing a service in the ordinary course of business; to wit, in this case, something more than the mere act of accreditation.[8] The flea market operator does not materially participate in trademark infringement by merely renting a stall to a merchant that sells counterfeit goods. Something more is required. The line of material participation can be crossed when the flea market operator becomes aware of the illicit activity and turns a blind eye to it for economic reasons, *i.e.*, because it does not want to lose the rental dollars it receives from its vendor or perhaps receives a percentage of sales of the illicit good. *Inwood Laboratories, Inc., v. Ives Laboratories, Inc.*, 456 U.S. 844 (1892). *Duty Free* concluded that the necessary state of mind[9] requires that the Defendant "intended to participate in or actually knew about the false advertising and actively and materially furthered the unlawful conduct by inducing it, causing it or otherwise seeking to bring it about. *Duty Free Americas*, 797 F.3d at 1227.

## IV. STAUTORY LIABILITY IMPOSES AN ENHANCED PROXIMATE CAUSE STANDARD

Cases based on statutory liability are subject to a proximate cause analysis that necessarily takes into account the harm and conduct that the statute proscribes. *Bank of America Corp., v. City*

---

[8] This is really a matter of common sense. If an accreditation body's act of accreditation was sufficient to show material patriation, then any business selling a good or service ultimately traceable to its accreditation would expose the accreditation body to contributory Lanham Act liability simply by engaging in its profession, if a downstream business made false statements about its good or services. Moreover, the summary judgment A2LA obtained on Plaintiffs' direct Lanham Act claim further precludes Plaintiffs from trying to prove or argue that A2lA's act of accreditation, alone, is sufficient for demonstrating material participation.

[9] When, as here, a corporation is alleged to have acted with culpable intent, the burden is on the plaintiff to identify the corporate employee or agent who possessed the requisite state of mind.

*of Miami, Florida*, 581 U.S. 198 (US 2017); *Lexmark,* 572 U.S. at 131-33. In *Lexmark,* the Supreme Court noted the importance of attributing loss to the proximate and not remote causes. *Id*. ("That venerable principle reflects the reality that 'the judicial remedy cannot encompass every conceivable harm that can be traced to an alleged wrongdoing.' ") (citation altered) The reference to "beyond the first step" refers to generally barring suits on proximate cause grounds based on harm that is <u>"too remote"</u> from the alleged violator's conduct so that it can be said that the injury is *directly attributable* to the defendant's conduct. *See id.* at 133. The proximate-cause analysis ultimately turns on "whether the harm alleged has a **sufficiently close connection** to the conduct the statute prohibits [unfair competition]." *Id.* at 131-133 (emphasis supplied); *see also id.* at 132 ("For centuries, it has been a well-established principle of [the common] law, that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause.") (internal citations omitted).

      The problem here that the Lanham Act's proximate cause analysis necessarily focuses on harm to sales *flowing directly from* the alleged false advertisements made by FII. But here, the sale of Brazilian plywood labeled as PS 1 compliant in the US market is quite removed from the alleged false certification of those mills by FII. The Brazilian PS 1 plywood is stamped and distributed by the Brazilian mills (not FII) to distributors who sell it to US wholesalers and retailers who then sell it to consumers. Of course, the grave misconduct Plaintiffs attribute to FII is itself sufficient to break any causal effect attributable to A2LA. Because Plaintiffs seek profit erosion damages only, market forces also come into play. Drawing a straight line from A2LA's accreditation of FII or FII's false certification to the price of plywood in the US market is not possible without ignoring the chain of causation that is necessarily involved in the sale of Brazilian PS 1 plywood in the US. *See, e.g. Geomatrix, LLC v. NSF Intl.,* 629 F. Supp 3d 691, 708-09 (E. D. Mich. 2022).

Assuming arguendo that Plaintiffs can present sufficient evidence to go to the jury on the question of statutory proximate cause under the Lanham Act, A2LA submits that the jury must be instructed that proximate cause must be those damages that are directly or surely attributable to its conduct, as opposed to other, intervening and independent causes and events.

Dated: August 18, 2025

Respectfully submitted,

*/s/ Peter R. Goldman*
Peter R. Goldman
Florida Bar No. 860565
Nina C. Welch
Florida Bar No. 118900
Danna Khawam
Florida Bar No. 1025114
Zackary B. Weiss
Florida Bar No. 1040682
**NELSON MULLINS**
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
Telephone: (954) 745-7060
Fax: (954) 761-8135
peter.goldman@nelsonmullins.com
stacy.brown@nelsonmullins.com
nina.welch@nelsonmullins.com
danna.khawam@nelsonmullins.com
zack.weiss@nelsonmullins.com
*Counsel for Defendant A2LA*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court and served on all counsel of record through the Court's CM/ECF system.

By: */s/ Peter R. Goldman*
Peter R. Goldman